[No. 39134.    Department Two.    November 15, 1968.]

BLANCHE C. BENJAMIN, *Appellant,* v. THE CITY OF SEATTLE, *Respondent.*\*

*Horswill, Keller, Rohrback, Waldo & Moren* and *Frank J. Woody,* for appellant.

*A. L. Newbould* and *Charles R. Nelson,* for respondent.

\*Reported in 447 P.2d 172.

HILL, J.—This is an appeal from a judgment of the trial court setting aside a verdict of $6,000 for the plaintiff, Blanche C. Benjamin, and granting the city of Seattle a judgment non obstante veredicto on the basis that no negligence had been established on the part of the city.

Mrs. Benjamin, a 73-year-old widow, short of stature, stepped from a Seattle transit trolley coach parked with the step a foot away from the curb. She apparently stepped down to the street, instead of the curb as she expected, and fell onto the sidewalk sustaining a serious fracture of the left femur and injury to her leg and foot.

The extent and character of her injuries are not questioned; the special damages alone being in the neighborhood of $3,000. The sole issue is whether there was evidence from which the jury could find that the city failed to exercise the care which it owed to the plaintiff as a paying passenger on its trolley coach.

We are satisfied from the record that the jury was entitled to find that the city failed to exercise the high degree of care owed to the plaintiff in that the trolley coach was not stopped close enough to the curb and that the driver did not warn the plaintiff of this fact or aid her in debarking from the coach. It is well established law that a bus system, as a common carrier of passengers, owes the highest degree of care toward its passengers commensurate with the practical operation of a coach at the time and place in question. *Boyd v. Edmonds,* 64 Wn.2d 94, 390 P.2d 706 (1964); *Peterson v. Seattle,* 51 Wn.2d 187, 316 P.2d 904 (1957).

The city's own regulations require that,

When the trolley coach is stopped the entrance door should be close enough to the curb to permit the passenger to step directly to the curb. If unable to get within this distance, the coach should be stopped sufficiently far from the curb so that the passenger can first step to the street.

There was absolutely no circumstance shown or suggested that would have prevented the trolley coach opera-

tor, in the practical operation of his coach, from stopping with the step of the coach at the curb.

The jury would have been justified in concluding that in stopping the trolley coach with the step a foot out from the curb, the operator was not exercising the highest degree of care commensurate with the proper operation of the trolley coach.

Having stopped the trolley coach, with the step a foot away from the curb, if that was not in itself a breach of the care owed the passengers, the city, acting through its trolley coach operator, owed some care to Mrs. Benjamin as she alighted from the trolley coach.

The quantum of care owed to an alighting passenger may vary with the age, size, and physical condition of the passenger and the position of the vehicle from which such passenger alights. *Boyd v. Edmonds, supra.*

The Supreme Court of Oklahoma laid down the proper rule in a similar case, *Lee v. Darden,* 421 P.2d 845, 848 (Okla. 1966), when it said:

> The evidence was conflicting as to the distance defendants' bus was stopped from the ramp. The plaintiff's age, stature and obvious physical limitations were matters discernible to the jury by observation. Whether a duty evolved from the circumstances shown to assist plaintiff in alighting from the bus, and whether defendant fulfilled such duty, presented questions determinable by the jury and not matters of law for the trial court. The trial court did not err in overruling defendants' demurrer to the evidence and motion for directed verdict.

The jury, in the present case, might well have considered, because of the age and size of the plaintiff and the distance of the trolley coach from the curb, that the operator should have assisted her from the coach or that, at the very least, he should have warned her of what, for her, was a dangerous situation.

The city had relied heavily in the trial court on the case of *Jaxon v. Detroit,* 3 Mich. App. 722, 143 N.W.2d 571 (1966), where the Michigan Court of Appeals, in a case where the city bus had stopped 3 or 4 feet from the curb

had held that a judgment non obstante veredicto should have been granted. However, the Supreme Court of Michigan thereafter reversed the Court of Appeals, saying:

> It was for the jury to determine whether the defendant's bus driver was acting in the premises as a reasonably prudent man under the same or similar circumstances. While it cannot be said that the driver was guilty of negligence as a matter of law, neither can it be said that he was free from negligence as a matter of law. It was a question of fact. (*Jaxon v. Detroit,* 379 Mich. 405, 151 N.W.2d 813, 815 (1967)

■ In considering the question of contributory negligence on the part of Mrs. Benjamin, it must be remembered that, as a passenger, she had the right to assume that the driver of the carrier had exercised the highest degree of care commensurate with the practical operation of the vehicle in selecting a safe place for her to alight, unless the danger was obvious. *Boyd v. Edmonds, supra; Jackson v. Seattle,* 15 Wn.2d 505, 131 P.2d 172 (1942). Whether the situation here presented an obvious danger to the plaintiff is a question of fact.

The issues of negligence and contributory negligence were properly presented to the jury by instructions which have not been challenged.

Both issues were decided adversely to the city and favorably to Mrs. Benjamin. The record contains evidence sufficient to support the jury's verdict. The judgment non obstante veredicto is set aside, and the verdict reinstated with directions to the trial court to enter a judgment on the verdict.

WEAVER, HUNTER, HAMILTON, and NEILL. JJ., concur.