## JAXON v. CITY OF DETROIT, DEPARTMENT OF STREET RAILWAYS.

### DECISION OF THE COURT.

1. CARRIERS—INJURIES TO ALIGHTING PASSENGER.

Judgments entered by trial court for plaintiffs, husband and wife, arising from injuries latter received as she alighted from defendant's bus are ordered affirmed, reversing Court of Appeals.

### SEPARATE OPINION.

### BRENNAN, J.

2. CARRIERS—DISCHARGE OF PASSENGERS.

*A carrier is obligated to bring its conveyance to a stop so as to discharge its passengers in a reasonably safe place, and whether the place at which a passenger was discharged was a safe place under the circumstances is generally a question of fact for the jury.*

3. SAME—NEGLIGENCE—DISCHARGE OF PASSENGER—SAFE PLACE.

*Whether defendant carrier's bus driver was acting as a reasonably prudent man under the circumstances in stopping his bus to discharge plaintiff passenger 3 or 4 feet from the curb, so that she fell while descending the rear exit stairs in the expecta-*

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 14 Am Jur 2d, Carriers § 982 et seq.
[2, 3, 13] 14 Am Jur 2d, Carriers § 984.
   Liability of motorbus carrier to passenger injured through fall while alighting from vehicle. 9 ALR2d 938.
[4] 14 Am Jur 2d, Carriers § 991.
[5, 6, 8] 8 Am Jur 2d, Automobiles and Highway Traffic § 959.
   Admissibility of report of public officer or employee on cause of or responsibility for injury to person or damage to property. 153 ALR 163, 69 ALR2d 1148.
[7] 29 Am Jur 2d, Evidence § 877.
   Refreshment of recollection by use of memoranda or other writings. 125 ALR 19, 82 ALR2d 473.
[9, 12] 4 Am Jur 2d, Appeal and Error § 397 et seq.
[10, 11] 53 Am Jur, Trial § 463 et seq.

*tion that the curb would be underneath them* held, *a question of fact for the jury, where the driver stopped his bus where he did as a result of his misjudgment of the actions of traffic near the stop.*

4. Same—Contributory Negligence—Alighting Passenger.
   *Whether plaintiff passenger, who fell while alighting from exit stairs of bus because she expected the curb to be under the rear exit stairs when in fact it was 3 or 4 feet away, was guilty of negligence,* held, *a question of fact for the jury whose finding ought not to be disturbed by appellate judges who have not had the opportunity to hear the witnesses, observe their mannerisms, and evaluate their testimony.*

5. Automobiles—Vehicle Code—Accident Reports—Admissibility.
   *Vehicle code provision that reports required under the code shall not be available for use in any court action, does not refer to report by a police officer to his superiors, but only to reports made under the statute by persons who are drivers of vehicles or in charge of garages or repair shops (CLS 1961, § 257.624).*

6. Same—Vehicle Code—Accident Reports—Admissibility.
   *Statement made by passenger injured in alighting from bus to police officer who investigated the accident and recorded the statement in his accident report was not privileged under the motor vehicle code, and therefore not excludable as evidence on that account (CLS 1961, § 257.624).*

7. Evidence—Writing—Past Recollection Recorded—Foundation.
   *A writing otherwise objectionable as hearsay, to be admitted in evidence as a past recollection recorded, must have a proper foundation which consists of: (a) a showing that the witness has no present recollection of the facts, (b) a showing that the witness' memory is not refreshed upon reference to the document, (c) a showing that the document is an original memorandum made by the witness from personal observation, (d) a showing that the document was prepared by the witness contemporaneously with the event and was an accurate recording of the occurrence, and (e) a showing that the substance of the proffered writing is otherwise admissible.*

8. Same—Police Report—Admissibility.
   *Written report of policeman about accident, offered in evidence upon a showing that the policeman who made it had no independent recollection of the accident except that he had*

*been called to the scene, had assisted plaintiff, and taken her to the hospital, and had made the usual investigation and prepared the usual report, held, not offered with proper foundation when there was no testimony upon the circumstances or the time at which the report was made.*

9. SAME—POLICE REPORT—ADMISSIBILITY—REVIEW ON APPEAL—SEPARATE RECORD.

*Admissibility of a written police report offered in evidence as past recollection recorded cannot be reviewed upon appeal in case where no separate record of the proffered writing was made.*

10. TRIAL—STATUTE—REFERENCE—JURY INSTRUCTION.

*Reference to a statute by plaintiff's counsel in his opening statement did not constitute error, where the reference was not adopted by the court in its instruction to the jury.*

11. SAME—STATUTE—REFERENCE—JURY INSTRUCTION.

*Reference by plaintiff's counsel to statute regulating maximum distance of parking vehicle from curb, in suit by plaintiff passenger against defendant carrier for injuries sustained when she fell while alighting from a bus which was stopped farther from the curb than the maximum distance specified in parking statute, held, not error, where the court, in referring to plaintiff's claims, made it clear that the court was not adopting anything contained therein, and further specifically instructed the jury that the parking statute did not apply in the case (CLS 1961, § 257.675).*

### SEPARATE OPINION.

#### T. M. KAVANAGH and SOURIS, JJ.

12. EVIDENCE—POLICE REPORT—ADMISSIBILITY—REVIEW ON APPEAL.

*Defendant's claim that a certain police report was erroneously excluded from evidence should not be considered on appeal where it does not appear in the record before the appellate court that the report was offered formally or even marked as an exhibit.*

### DISSENTING OPINION.

#### DETHMERS, C. J., and KELLY and O'HARA, JJ.

13. CARRIERS—DISCHARGE OF PASSENGER.

*Stopping of bus by defendant carrier's bus driver to discharge passenger 3 or 4 feet from curb is not actionable negligence as a matter of law, because it would be unreasonable to require*

*a bus driver in one of the nation's largest metropolises to bring his vehicle to rest at the same spot in a busy intersection every time he stops there.*

Appeal from Court of Appeals, Division 1; J. H. Gillis, P. J., and Fitzgerald and Quinn, JJ., reversing Wayne, Canham (James N.), J.  Submitted May 3, 1967.  (Calendar No. 7, Docket Nos. 51,552, 51,553.)  Decided July 21, 1967.

3 Mich App 722, reversed.

Declaration by Della Jaxon against City of Detroit, Department of Street Railways, a municipal corporation, for damages resulting from personal injuries to plaintiff while alighting from a bus. Derivative action by Albert Jaxon against the same defendant.  Cases were heard together and resulted in verdicts and judgments for plaintiffs.  Defendant appealed to Court of Appeals which reversed and remanded for entry of judgment for defendant notwithstanding the verdicts for plaintiffs.  Plaintiffs appeal.  Judgments entered by Court of Appeals are reversed and judgments entered by trial court are affirmed.

*Goodman, Eden, Robb, Millender, Goodman & Bedrosian* (*George J. Bedrosian* and *William H. Goodman,* of counsel), for plaintiffs.

*Manuel Zechman* and *David Grainer,* for defendant.

BRENNAN, J.  This appeal is by leave granted from a decision of the Court of Appeals reversing the circuit court.[1]  Husband and wife, plaintiffs,

_____

[1] *Jaxon* v. *City of Detroit, D.S.R.,* 3 Mich App 722, 378 Mich 731.— REPORTER.

recovered verdicts at the hands of a jury in the Wayne circuit court and the trial judge entered judgments thereon. Motions for judgment notwithstanding the verdicts or for a new trial in each case were denied.

On May 21, 1961, Della Jaxon was a passenger on a D.S.R. bus northbound on Woodward avenue. She fell and was injured while in the process of getting off the bus at the bus stop on the Woodward avenue overpass at Davison avenue. The accident occurred about 12:30 in the afternoon. It was a clear, sunny day. Mrs. Jaxon had been riding D.S.R. buses on this same line for 17 years, about once or twice a week. It was her testimony that the bus customarily stopped close enough to the curb so that in stepping off of the bus she could step directly onto the curb. There was testimony from a supervisor of the D.S.R. that D.S.R. drivers were instructed to go as close to the curb as possible to discharge the passengers. On the day in question, the bus on which the plaintiff, Della Jaxon, was riding was brought to a stop at the Davison bus stop in such a way that the rear door was 3 or 4 feet from the curb. Mrs. Jaxon testified that there were other passengers disembarking from the bus in front of her and that as she stepped out of the rear door she was unable to see that the bus was not at the curb by reason of these other passengers. She apparently expected to step onto the curb, but alas there was no curb underfoot and the plaintiff went atumbling. Mrs. Jaxon fell victim to Fetridge's law.[2]

---

[2] "Fetridge's law takes its name from a radio engineer named Claude Fetridge, once in the employ of the National Broadcasting Company. This Mr. Fetridge, back in 1936, thought up the idea of broadcasting the flight of the famous swallows from Mission San Juan Capistrano in Southern California. As is well known, the swallows depart from the mission each year on October 23d, which is St. John's Day, and return to the mission on March 19th, St. Joseph's Day. Claude

Four issues present themselves for determination
in this cause and the facts necessary for each will
be discussed in connection therewith: (1) Whether
the D.S.R. was free from any negligence as a mat-
ter of law; (2) Whether the plaintiff, Della Jaxon,
was guilty of contributory negligence as a matter
of law; (3) Whether the court erred reversibly in
refusing to permit a police report to be read in
evidence; (4) Whether the court erred reversibly
in making reference to a parking statute.

Issue number one, whether the D.S.R. was free
from negligence as a matter of law. There have
been a number of cases predicated upon the failure
of a bus driver to bring the bus to a stop so that
passengers can alight onto the curb.[3] The general
rule is that a carrier is obligated to bring his con-
veyance to a stop so as to discharge its passengers
in a reasonably safe place. In general, whether the
place at which a given passenger was discharged
was or was not a safe place under the circumstances
is a question of fact for the jury. In the instant
case, the bus driver was a victim of Gumperson's
law.[4]

---

Fetridge conceived the idea of broadcasting the whirr and flutter of
eager wings of the departing swallows on October 23d. NBC went
to considerable effort and expense to set up its equipment and
transport its crew to the mission. And with the entire nation waiting
anxiously for this soul-stirring, mystical event, it was discovered
that the swallows out of sheer orneriness or because the devil had got
to them, had taken their departure a day ahead of schedule. Thus
did a flock of passerine birds of the family hirundinidae, eager to
moult, lend a sort of immortality to a man named Claude Fetridge."
A Short History of Fingers, H. Allen Smith (1963, Little, Brown &
Company), pp 7, 8.

[3] *Hole* v. *Womack* (1965), 75 NM 522 (407 P2d 362); *Malzer* v.
*Koll Transportation Company* (1931), 108 NJL 296 (156 A 639);
*Del Vecchio* v. *Haflin Bus Company* (1947), 135 NJL 339 (50 A2d
881); *Boyd* v. *City of Edmonds* (1964), 64 Wash 2d 94 (390 P2d
706); *Fordyce* v. *White Star Bus Lines, Inc.* (1931), 304 Pa 106 (155
A 98); *Greco* v. *Public Service Interstate Transportation Company*
(1947), 135 NJL 280 (51 A2d 1); *Mills* v. *City of Cleveland* (1954),
97 Ohio App 78 (117 NE2d 471, 55 Ohio Op 310).

[4] Not to be confused with Fetridge's Law, which in simple lan-
guage states that important things which are supposed to happen do

It seems that in approaching the intersection of Woodward avenue and Davison, the driver of defendant's bus was prevented from approaching the bus stop in the curb lane by reason of several vehicles stopped in the right-hand or curb lane for the apparent purpose of turning right onto the eastbound Davison service drive. Acting upon the welcome probability that all of the vehicles in the curb lane proposed to turn right onto the Davison service drive, the bus driver proceeded north in the second lane. Upon having thus committed himself, the contrary of this welcome probability was asserted, and at least one of the automobiles which had been apparently waiting in line to turn right proceeded instead directly north alongside of the bus. The driver was thereupon required to slow or stop the bus and permit traffic to clear in the curb lane before approaching the bus stop. This series of events resulted in the bus approaching the curb at somewhat of an angle so that, although the front of the bus was quite close to the curb, the rear of the bus, and particularly the rear exit, was 3 or 4 feet from the curb. It was for the jury to determine whether the defendant's bus driver was acting in the premises as a reasonably prudent man under the same or similar circumstances. While it cannot be said that the driver was guilty of negligence as a matter of law, neither can it be said that he was free from negligence as a matter of law. It was a question of fact.

Issue number two, whether the plaintiff, Della Jaxon, was guilty of negligence as a matter of law. Mrs. Jaxon testified that she was aware that the

not happen, especially when people are looking, Gumperson's Law has been defined: The contradictory of a welcome probability will assert itself whenever such an eventuality is likely to be most frustrating. A Short History of Fingers, H. Allen Smith (1963, Little, Brown & Company), p 7.

bus had come to her stop, that she was not aware that the bus was out from the curb 3 or 4 feet, that her view out of the door was blocked by other alighting passengers, that in looking down she saw only the pant leg of a man in front of her, that the other passengers alighted without difficulty, and that she expected to step onto the curb. Whether her expectations were reasonable, whether her view was obstructed, whether a reasonably prudent person in the same or similar circumstances would have waited in the doorwell until she could make a more careful observation before stepping down were all matters for the jury. It determined as a matter of fact that the plaintiff was not guilty of contributory negligence and this factual determination ought not to be disturbed by appellate judges who have been denied the opportunity to hear the witnesses, observe their mannerisms, and evaluate their testimony.

Issue number three, whether the court erred reversibly in refusing to admit the police report in evidence. A police officer was called as a witness. He had no independent recollection of the accident except to say that he had been called to the scene, had assisted the plaintiff, and taken her to the hospital, and had made the usual investigation and prepared the usual report. Apparently defense counsel wanted to get before the jury a statement which the plaintiff had made to the officer, which statement was recorded in his accident report. Such a statement would not have been unavailable as evidence by reason of the statute.[5] The statutory exemption refers only to reports required under "this chapter." The only persons required to

---

[5] "The reports required by this chapter shall not be available for use in any court action, but it shall be for the purpose of furnishing statistical information as to the number and cause of accidents." CLS 1961, § 257.624 (Stat Ann 1960 Rev § 9.2324).

make reports under the statute are drivers of vehicles and persons in charge of garages or repair shops. The statute does not refer to any report by a police officer to his superiors. The purpose of the exempting section of the statute is to shield the prior sections of the law from constitutional challenge on the ground that they require self-incrimination.[6] But although the report involved in this case was not privileged under the statute, it was not admissible as a past recollection recorded. To qualify a writing otherwise objectionable as hearsay to be admitted in evidence as a past recollection recorded, a proper foundation must be laid. That foundation should consist in the following: (a) a showing that the witness has no present recollection of the facts, (b) a showing that the witness' memory is not refreshed upon reference to the document, (c) a showing that the document is an original memorandum made by the witness from personal observation, (d) a showing that the document was prepared by the witness contemporaneously with the event and was an accurate recording of the occurrence and, (e) a showing that the substance of the proffered writing is otherwise admissible. Defendant's offer of the entire police report without any testimony upon the circumstances or the time at which the report was made was insufficient. Finally, since no separate record of the proffered writing was made, there is no way for it to be reviewed upon appeal.

Issue four, whether the court erred reversibly in its reference to a certain parking statute. In the original complaint, plaintiff alleged that the defendant driver was guilty of negligence in failing to stop the bus within the maximum distance from the curb as required by statute.[7] Plaintiff repeated

---

[6] *People* v. *Thompson,* 259 Mich 109, at page 124.

[7] CLS 1961, § 257.675 (Stat Ann 1960 Rev § 9.2375).

this allegation in her pretrial statement. Plaintiff's pretrial statement was read to the jury during *voir dire* examination to acquaint prospective jurors with plaintiff's theory of the case. No objection was made by defendant's counsel at that time. Plaintiff's counsel in his opening statement again referred to the statute whereupon defense counsel objected on the ground that the statute was a parking statute, that the legislative intent was related to the flow of traffic rather than to the safety of persons getting in and out of vehicles, and that therefore the statute was not relevant to this case. We do not here pass upon the validity of that argument. The court took the objection under advisement and no further reference to the statute was made until the court in its instruction to the jury again read plaintiff's pretrial statement in setting forth plaintiff's theory of the case, including the statutory reference. Finally, at the request of defendant's counsel, the court specifically instructed the jury as follows:

"The Court. There is—I assume that my charge indicated that—the court made a ruling earlier in this proceeding that the allegation of the plaintiffs, at the outset of this trial, that the DSR was guilty of violating a State statute in parking a certain distance from the curb does not apply here. The question of whether or not the bus driver was a reasonable prudent person under like or similar circumstances is what you are to determine."

This statement by the court was sufficient to answer defendant's objection. Nowhere did the court tell the jury that the statute did apply. Mere reference to the statute by plaintiff's counsel in his opening statement did not constitute error where not adopted by the court in its instruction to the jury. The reading of pretrial statements submitted by the parties, particularly where prefaced with such words

as "plaintiffs contend," "defendant contends," "plaintiffs' version," "defendant's version," does not constitute an adopting of anything contained therein, whether of fact or of law. A reading of the pretrial statements by the court in this case was prefaced with these words, "I have at this time the obligation to give you again the respective versions of the plaintiff and the defendant, so you will be aware of the theories as presented to me. I will now give them to you." After reading the excerpts from the pretrial statements, the court said, "That very briefly is the respective position of the plaintiffs and the defendant." This charge then did not include an adoption by the court of the parking statute which defendant claims is inapplicable, and the charge taken as a whole was not reversibly in error.

For the foregoing reasons, the Court of Appeals is reversed and the judgments of the trial court entered upon the jury's verdicts are affirmed, with costs to the plaintiffs, appellants in this Court.

Black and Adams, JJ., concurred in result with Brennan, J.

Souris, J. (*concurring*). Mr. Justice Brennan discusses in his opinion a certain police report the defendant claims was erroneously excluded from evidence. From the record before this Court it does not appear that the report was offered formally or even marked as an exhibit. Under such circumstances, defendant's argument on appeal with reference to its admissibility should be rejected out of hand.

Subject to the foregoing, I concur in Justice Brennan's disposition of the appeal and for the reasons stated in his opinion.

T. M. Kavanagh, J., concurred with Souris, J.

O'Hara, J. (*dissenting*). I am uninstructed in Fetridge's law and Gumperson's law. Insofar as negligence law is concerned I accept the statement of the Court of Appeals that:*

"The record here discloses the only unsafe feature of the place of discharge was that the place was not where Mrs. Jaxon expected it to be.   *   *   *   We hold as a matter of law that no actionable negligence is shown on this record."

It would be somewhat unreasonable to require a bus driver in one of the nation's largest metropolises to bring his vehicle to rest at the same spot in a busy intersection every time he stops there.

I vote to affirm the order of the Court of Appeals for the reasons set forth in its opinion.

Dethmers, C. J., and Kelly, J., concurred with O'Hara, J.

---

* 3 Mich App 722, 724.