PEOPLE v CURRY

PEOPLE v JENKINS

1. CRIMINAL LAW—IDENTIFICATION—PHOTOGRAPHIC IDENTIFICATION—
CUSTODY OF ACCUSED—CASE PRECEDENT—RETROACTIVE APPLICA-
TION.

The rule that a photographic identification should not be used
when the accused is in custody is not retroactively applied to a
case in which trial was concluded prior to the date of the
Supreme Court decision which first enunciated the rule.

2. CRIMINAL LAW—IDENTIFICATION—PHOTOGRAPHIC IDENTIFICATION—
CUSTODY OF ACCUSED—RIGHT TO COUNSEL—INDEPENDENT BASIS.

Failure to provide counsel to a defendant at a photographic
showing conducted after the defendant is in custody is error,
but such failure will not render inadmissible later in-court
identification testimony if that testimony has a basis indepen-
dent of the tainted photographic display procedures.

3. KIDNAPPING—INSTRUCTIONS TO JURY—ASPORTATION.

The existence of asportation is a question of fact which must be
submitted to the jury upon proper instruction, in a trial for
kidnapping, even in the absence of a request for such an
instruction.

4. KIDNAPPING—ASPORTATION—INSTRUCTIONS TO JURY—CASE PRECE-
DENT—RETROACTIVE APPLICATION.

A holding of the Michigan Supreme Court which requires that a
trial court instruct the jury on asportation in a kidnapping case
is to be applied retroactively.

5. KIDNAPPING—SECRET CONFINEMENT—ASPORTATION—INSTRUCTIONS
TO JURY—QUESTION OF FACT.

Secret confinement may serve as an alternative element to aspor-

REFERENCES FOR POINTS IN HEADNOTES

[1, 4] 20 Am Jur 2d, Courts §§ 233–236.

[2] 21 Am Jur 2d, Criminal Law §§ 313, 369.
    Accused's right to counsel under the federal Constitution. 2 L Ed 2d
    1260.

[3, 5] 1 Am Jur 2d, Abduction and Kidnapping § 11 et seq.

tation to complete the crime of statutory kidnapping; and the existence of asportation or some alternative element such as secret confinement is a question of fact for the jury under appropriate instructions.

Appeal from Washtenaw, William F. Ager, Jr., J. Submitted Division 2 December 11, 1974, at Lansing. (Docket Nos. 17853, 17961, 19197, 19198, 19199, 19200.) Decided January 29, 1975.

Dwight Curry and Edward Jenkins were each convicted of armed robbery, kidnapping, and extortion. Defendants appeal. Affirmed in part, reversed in part, and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William F. Delhey,* Prosecuting Attorney, and *Lynwood E. Noah,* Senior Assistant Prosecuting Attorney, for the people.

Washtenaw County Public Defender (by *Robert Olson,* Senior Assistant Public Defender), for defendants on appeal.

Before: DANHOF, P. J., and BASHARA and ALLEN, JJ.

PER CURIAM. Defendants were convicted by a jury of two counts of armed robbery, MCLA 750.529; MSA 28.797; kidnapping, MCLA 750.349; MSA 28.581 and extortion, MCLA 750.213; MSA 28.410. They were both sentenced to serve concurrent terms of 15 to 40 years for each of the armed robberies and for kidnapping, and 13 to 20 years for extortion.

At approximately 8 p.m. on January 7, 1972, a driver for an Ann Arbor pizzeria, Daniel Campbell, was making a delivery when he was confronted by

two men armed with a rifle and a handgun. These men were later identified by Campbell as the defendants. Campbell was ordered into the back seat of the delivery car, and about $38 was taken from him. The car was driven to a secluded field where he was taken from the back seat, tied with a rope, and locked in the trunk of the car with a small rat. The defendants proceeded in the pizza delivery car to the home of a manager of a local large chain grocery store. Using the pizzas taken from the delivery car, and while still armed, they gained entrance into the home where the store manager's wife was alone with their two daughters. They forced the wife to call her husband at the store, and they demanded that he leave $2000 in a trash receptacle at a nearby apartment complex. They tied up the woman and the children, ransacked the house, took various guns and other property, and left in the family car. The car was later discovered abandoned by the Ann Arbor police, and found to contain the stolen guns and two pizzas. Fingerprints found on the pizza boxes matched those of defendant Jenkins.

The store manager notified the police, and they apprehended two men, who later implicated the defendants, while they were rummaging in the trash receptacle in which the money had been placed. Following his release from the trunk of the pizza delivery car later that night, Campbell was shown a group of ten photographs at about 11 p.m. He picked out a photograph of defendant Curry. Another group of photographs was shown to Campbell at about 2 a.m. after the defendants had been arrested. Campbell recognized photographs of both defendants at the second display. At trial, Campbell positively identified both defendants, and he was permitted to testify, over defendants' objec-

tion, to his recognition of the defendants at the two previous photographic showings. Defendants now claim that this was error. We disagree.

Defendants argue that, under the rules promulgated by *People v Franklin Anderson,* 389 Mich 155; 205 NW2d 461 (1973), the second photographic showing, held after they were in custody, was improper, and reference to it should not have been allowed at trial. They also argue that they were entitled to the presence of counsel at the second photographic lineup, and that it was error to admit the in-court identification testimony of witness Campbell which had been tainted by these illegal proceedings.

The defendants are correct when they cite *People v Franklin Anderson, supra,* for the rule that photographic identification should not be used where the accused is in custody. However, it has been repeatedly held that this rule is not retroactive. *People v Duke,* 50 Mich App 714; 213 NW2d 769 (1973); *People v Edwards,* 55 Mich App 256; 222 NW2d 203 (1974); *People v McBride,* 55 Mich App 234; 222 NW2d 195 (1974); *People v Kennington,* 55 Mich App 61; 222 NW2d 34 (1974). Trial in the present case was concluded prior to the release of the decision in *Anderson.* Thus, the holding in that case will not be applied to these defendants.

Defendants are also correct in maintaining that, under *Anderson, supra,* once they were in custody, they had a right to counsel at the photographic showings, and that failure to provide counsel was error. *People v Jackson,* 391 Mich 323; 217 NW2d 22 (1974); *People v James Anderson,* 391 Mich 419; 216 NW2d 780 (1974). However, even though it was error to conduct these photographic showings without counsel present, it is well settled that this will not render inadmissible later in-court identifi-

cation testimony if that testimony has a basis independent of the tainted photographic display procedures. *People v Franklin Anderson, supra; People v James Anderson, supra; People v Duke, supra; People v McBride, supra; People v Edwards, supra.*

The delivery driver, Daniel Campbell, had ample opportunity to observe the defendants when they first accosted him in the apartment complex parking lot. He sat in the back seat while the defendants sat in the front seat of the delivery car and drove him to a secluded area where he was tied up and locked in the trunk. While these events were transpiring he was able to clearly see the defendants who wore no masks and made little effort to conceal their features. Campbell positively identified defendant Curry at the first properly conducted photographic showing held before the defendants were taken into custody. At the preliminary examination, witness Campbell stated, in response to defense counsel's attempts to show that the photographic display procedures tainted his identification of the defendants, that "I could have pointed them out without seeing the pictures". In view of these facts, we conclude that Campbell's in-court testimony identifying the defendants was admissible because it was based upon sources independent of the tainted photographic display.

At the conclusion of the trial, the court gave an instruction to the jury on kidnapping which excluded reference to the element of asportation. This was error. *People v Adams,* 389 Mich 222; 205 NW2d 415 (1973). The existence of asportation is a question of fact which must be submitted to the jury upon a proper instruction, even in the absence of a request.

The prosecutor contends that the kidnapping conviction should not be reversed for two reasons. First it is suggested that the decision in *Adams* should only be applied prospectively. This Court has now directly decided that the doctrine enunci-·ated in *Adams* will be applied retroactively. *People v Wireman,* 53 Mich App 601; 220 NW2d 196 (1974). Secondly, it is argued that this is a case of secret confinement, expressly exempted from the asportation instruction requirements of *Adams.* This assertion was accurately answered by Judge McGREGOR in *People v Pacely,* 51 Mich App 67, 74; 214 NW2d 561 (1974):

"To avoid reversal, the prosecutor urges that this case involves secret confinement and, hence, no charge was necessary regarding asportation. In so doing, he misconstrues the *Adams* decision. Although *Adams* does indicate that secret confinement may serve as an alternative element to complete the crime of statutory kidnapping, it is also clear that the existence of asportation or some alternative element, such as secret confinement, is a question of fact for the jury under appropriate instruction. *Adams, supra,* 238; 205 NW2d 423."

The trial court's instruction makes no mention of the alternative element of secret confinement. The defendants' convictions of kidnapping are reversed and remanded for a new trial. The convictions of armed robbery and extortion are affirmed.

Affirmed in part and reversed in part.