PEOPLE v BRASSELL

OPINION OF THE COURT

1. EVIDENCE—HEARSAY—EXCEPTIONS—PAST RECOLLECTION RECORDED
—ELEMENTS.

To qualify a writing otherwise objectionable as hearsay to be
admitted in evidence as a past recollection recorded, a proper
foundation must be laid consisting of: (a) a showing that the
witness has no present recollection of the facts, (b) a showing
that the witness's memory is not refreshed upon reference to
the document, (c) a showing that the document is an original
memorandum made by the witness from personal observation,
(d) a showing that the document was prepared by the witness
contemporaneously with the event and was an accurate record-
ing of the occurrence and, (e) a showing that the substance of
the proffered writing is otherwise admissible.

DISSENT BY M. J. KELLY, J.

2. EVIDENCE—HEARSAY—EXCEPTIONS—ADMISSIBILITY—PAST RECOLLEC-
TION RECORDED—PRESERVING QUESTION.

*The propriety of the admission into evidence of a written memo-
randum of an incriminating interview with a defendant under
the past recollection recorded exception to the hearsay rule is
not properly preserved for appellate review where defense
counsel chose not to raise an objection to the admission of the
memorandum in order to avoid an unnecessary fuss before the
jury which might weigh against him when the memorandum
was allowed either in substance or form.*

3. TRIAL—ATTORNEY AND CLIENT—ATTORNEY ERROR—NEW TRIAL—
BUT FOR TEST—TIMELY OBJECTION—TRIAL TACTICS—MISCAR-
RIAGE OF JUSTICE.

*A court may grant a new trial to a party despite failure to have
preserved the question by timely objection where the party's*

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 29 Am Jur 2d, Evidence § 498.
[3] 58 Am Jur 2d, New Trial § 56 *et seq.*

*lawyer makes a mistake of such serious proportions that it may have been decisive, or where but for the lawyer's mistake a defendant might not have been convicted; but conduct of counsel which can be fairly ascribed to reasonable trial tactics should not be the basis for a new trial or a reversal where there has been no miscarriage of justice.*

Appeal from Berrien, Julian Hughes, J. Submitted March 3, 1975, at Grand Rapids. (Docket No. 19681.) Decided September 23, 1975.

Elbert Brassell was convicted of armed robbery. Defendant appeals. Reversed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *John A. Smietanka,* Prosecuting Attorney, and *John Jeffery Long,* Assistant Prosecuting Attorney, for the people.

*Francis Zebot,* Assistant State Appellate Defender, for defendant.

Before: D. E. HOLBROOK, P. J., and BRONSON and M. J. KELLY, JJ.

D. E. HOLBROOK, P. J. On November 21, 1973, a jury convicted defendant of armed robbery, contrary to MCLA 750.529; MSA 28.797. On January 17, 1974, defendant was sentenced to 8 to 25 years in prison. Defendant has consistently maintained his innocence. He appeals his conviction as of right.

On August 24, 1973, several men robbed a Benton Harbor tavern at gunpoint. Neither the bartender nor any of the patrons who were in the bar at the time of the robbery were able to identify defendant as one of the holdup men. As a matter of fact, one of the witnesses testified that defendant "wasn't one of them". While the fingerprints

of some of the other suspects were found in the alleged get-away car, defendant's fingerprints were not found. The only evidence linking defendant to the crime in question was an unsigned typewritten confession. Defendant took the stand in his own behalf, entered an alibi defense, and denied ever making the statements contained in the confession. Defendant admitted having a conversation with the officer in question on the date the confession was allegedly made, but he claims that conversation was restricted to promises of leniency for defendant's younger brother should defendant decide to make a statement. The question of the admissibility of the conversation was decided at a *Walker* hearing well in advance of trial; but the *admissibility* of the conversation is not the subject of this appeal. We are here concerned with the *manner* in which the purported confession was introduced into evidence.

At trial, the detective who allegedly took the statement from defendant was allowed to read it into the record verbatim under the "past recollection recorded" exception to the hearsay rule. Defendant makes several allegations of error concerning the application of the doctrine of past recollection recorded to the facts of this case. We are constrained to agree with one of defendant's allegations, and feel that it requires reversal. Defendant correctly contends that a proper foundation was not laid to allow the admission of this statement as evidence as a past recollection recorded. The rule in Michigan is stated in *Jaxon v Detroit,* 379 Mich 405, 413; 151 NW2d 813, 816 (1967):

"To qualify a writing otherwise objectionable as hearsay to be admitted in evidence as a past recollection recorded, a proper foundation must be laid. That foun-

dation should consist in the following: (a) a showing that the witness has no present recollection of the facts, (b) a showing that the witness' memory is not refreshed upon reference to the document, (c) a showing that the document is an original memorandum made by the witness from personal observation, (d) a showing that the document was prepared by the witness contemporaneously with the event and was an accurate recording of the occurrence and, (e) a showing that the substance of the proffered writing is otherwise admissible."

Applying the rule in *Jaxon,* the Michigan Supreme Court in *People v Rodgers,* 388 Mich 513, 519; 201 NW2d 621, 624 (1972), said:

"The written memorandum was read to the jury. This constituted its admission in evidence. This was error. The writing was prepared by the Detective Taylor, out of court and was not signed by the witness King. The writing was hearsay. It was an extrajudicial statement (by Taylor) offered to prove the truth of the thing said (that King had spoken the words imputed to him).

"There was nothing to prevent Taylor from testifying verbally. He could have related his conversation with King. If he could not recall the conversation, he could have been shown the memorandum to refresh his memory. If he could not then testify without the aid of the memorandum, the written memorandum might then have been introduced in evidence and read to the jury provided a proper foundation was laid."

Thus, the first requirement in laying a foundation for the past recollection recorded exception is that the witness have no present recollection of the facts. *People v Banks,* 50 Mich App 622, 625; 213 NW2d 817, 818 (1973). This was never shown in the case before us:

*"Q. [by assistant prosecutor].* And do you recall *each*

*and every question* you may have asked the defendant
and *each and every answer* he gave?

"*A. [by police officer Popp].* No, sir, not offhand.

"*Q.* Do you have a copy of the record you made of
that conversation with the defendant with you?

"*A.* Yes, sir, I do.

"*Q.* O.K. I ask you do you have it with you?

"*A.* Yes, sir, I do.

"*Q.* Would you remove it, please?

"*A.* Yes, sir.

"*Q.* All right. At this time I will ask you to look at
that record, officer, and I will ask you whether by
looking at it you can recall *each and every question and
answer* just by look at it?

"*A.* Not just by looking at it, sir, not enough to testify
in a court of law." (Emphasis supplied.)

Obviously, there is a big difference between having
no recollection whatever and recalling "each and
every question and answer". Few humans are
blessed with total recall. Fortunately, our courts
do not demand total recall of witnesses; nor will
they allow a document to be read into evidence
merely because a witness cannot remember per-
fectly the conversation the document embodies.

Had it been established that the witness had no
recollection of the conversation in question, the
next step in laying a foundation would have been
to show that a reading of the document would not
refresh his memory. The question is not whether a
reading of the document will, in the witness's own
opinion, refresh his memory "enough to testify in
a court of law". He should have been questioned in
order to determine whether or not be could testify
without the aid of the memorandum after he had
read it.

Reversed and remanded for a new trial.

BRONSON, J., concurred.

M. J. KELLY, J. *(dissenting)*. I disagree that reversal is warranted here.

The question of the admissibility of defendant's confession was decided at a *Walker* hearing well in advance of trial. The hearing was conducted November 1, 1973, following which defense counsel made a motion to suppress evidence and a motion to quash, each of which was denied. Those orders are not challenged on this appeal. The voluntariness of defendant's confession is not at issue. Trial commenced November 20th and concluded November 21, 1973. Before that trial commenced, a transcript of the *Walker* hearing was ordered and produced. Defendant had the transcript prior to trial and he and his trial counsel well knew what was coming when the police officer who conducted the interrogation took the stand.

The dispute on appeal involves Officer Popp's reading verbatim his memorandum of the incriminating interview. The exchange quoted in the majority opinion appears to me to have been a predetermined attempt at laying the foundation required by *People v Rodgers,* 388 Mich 513, 519; 201 NW2d 621, 624 (1972). The prosecutor's intent, I surmise, was to give the officer a question he could not answer affirmatively so as to lead him into the reading of the memorandum. Defendant did not object for a very good reason. He knew what was coming because of the *Walker* ruling. If he made an unnecessary fuss before the jury it would weigh against him when the confession was allowed either in substance or in transcript. The defense attorney knew what was coming, he chose not to fight the technical procedural battle only to lose the evidentiary war. This issue was not preserved for our review. *People v Farmer,* 380 Mich 198, 208; 156 NW2d 504 (1968), *People v Ames,* 60

Mich App 168, 172; 230 NW2d 360 (1975), *People v Duncan,* 55 Mich App 403, 408–409; 222 NW2d 261 (1974).

I also find no merit in defendant's alternative claim of ineffective assistance of counsel. Defendant on appeal states that defense counsel's failure to object to the reading of the memorandum without a proper foundation is a serious mistake of counsel for which he can receive relief under *People v Degraffenreid,* 19 Mich App 702, 715; 173 NW2d 317 (1969). The rule is:

"Where the lawyer's mistake is of such serious proportion that it may have been decisive, where but for the lawyer's mistake the defendant might not have been convicted, the court may, despite failure to have preserved the error by timely objection, grant a new trial." 19 Mich App at 716.

This clearly appears to me to be no mistake at all and qualifies under *People v Bottany,* 43 Mich App 375; 204 NW2d 230 (1972) as a reasonable trial tactic. Defense counsel had the memo before him at the *Walker* hearing and he had the *Walker* transcript before him at trial. Perhaps he felt that the verbatim reading would more suit his purpose than the allowable paraphrasing by the officer. Sending this back for retrial serves only to give the defendant a second crack with a new jury; it does not serve to outlaw the confession. A trial lawyer is faced with difficult choices when his adversary misses procedural steps on the way toward admission of incriminating evidence. Such missteps are easily cured following objection— most often to the detriment of the objector. If we do not leave the choice to trial counsel we are substituting our judgment for his under very different circumstances. Every trial lawyer who ever

lost a case would have done it differently. The winner made no mistakes.

Appellate counsel turns the second guess on trial counsel wherever the case has been lost. We should not countenance such practice where there has been no miscarriage of justice.

I would affirm.