PEOPLE v RAPPUHN

OPINION OF THE COURT

1. JUDGES—JURY—INSTRUCTIONS TO JURY—JUDGE'S DUTY.

It is a trial judge's duty to inform the jury of the law, so that they may understand and apply the law to the facts of the case.

2. CRIMINAL LAW—INSTRUCTIONS TO JURY—ELEMENTS OF CRIME.

A criminal defendant has a right to have a properly instructed jury pass upon the evidence and the instructions must include all of the elements of the crime charged.

3. KIDNAPPING—INSTRUCTIONS TO JURY—ASPORTATION—INDEPENDENT SIGNIFICANCE—UNDERLYING ACTIVITY.

An instruction to a jury in a trial for kidnapping was not adequate to explain the law on the element of asportation where the instruction stated only that the asportation of the victim must have an independent significance, but did not explain to the jury of what the significance must be independent or that complicated movement and increased danger, or a threat thereof, are to be considered in determining whether the movement of the victim constituted the necessary legal asportation.

4. KIDNAPPING—INSTRUCTIONS TO JURY—ASPORTATION—INDEPENDENT SIGNIFICANCE—UNDERLYING OFFENSE.

A trial judge's failure to inform the jury in a trial for kidnapping

REFERENCES FOR POINTS IN HEADNOTES

[1] 75 Am Jur 2d, Trial §§ 96, 574, 575.
[2, 3, 11, 12] 75 Am Jur 2d, Trial §§ 713, 715.
[4] 75 Am Jur 2d, Trial § 876.
[5] 81 Am Jur 2d, Witnesses § 324.
[6] 81 Am Jur 2d, Witnesses § 67.
[7] 5 Am Jur 2d, Arrest §§ 41, 43.
[8] 29 Am Jur 2d, Evidence §§ 876, 877.
[9, 15] 81 Am Jur 2d, Witnesses §§ 587–590.
[10] 21 Am Jur 2d, Criminal Law § 188.
[13] 29 Am Jur 2d, Evidence § 494.
   30 Am Jur 2d, Evidence § 1103.
[14] 81 Am Jur 2d, Witnesses §§ 500, 501.

that the asportation of the victim must have a significance independent of the commission of a lesser underlying offense constitutes error even where the defendant was not charged with any underlying offense.

5. WITNESSES—CRIMINAL LAW—RES GESTAE WITNESSES.

A res gestae witness is one who was an eyewitness to some event in the continuum of a criminal transaction and whose testimony will aid in developing a full disclosure of the facts surrounding the alleged commission of the charged offense; this does not include persons who were present when a defendant gave a statement in the assistant prosecutor's office several hours after the defendant's arrest.

6. CRIMINAL LAW—WALKER HEARING—FINDING OF VOLUNTARINESS.

A trial court did not err in ruling at a *Walker* hearing that a defendant's statement was voluntarily given where there is nothing in the record to suggest that defendant's statement was other than voluntary and where defense counsel examined the only witness whom he wished to examine, declined to offer any testimony on defendant's behalf, and made no objection to the court's finding of voluntariness.

7. ARREST—ARREST WITHOUT WARRANT—LAWFUL ARREST—KIDNAPPING.

A defendant was lawfully arrested for kidnapping, without issuance of a warrant for the arrest, where the arresting officer came upon the scene of the defendant's disabled automobile while the defendant was attempting to remove the automobile from a snowbank and the officer observed the complainant inside the defendant's car, bound and screaming and banging her head against the door of the car.

8. CRIMINAL LAW—EVIDENCE—WRITINGS—PART RECOLLECTION RECORDED—FOUNDATION FOR ADMISSION.

Necessity for refreshing a witness's memory is a prerequisite to the use of a writing either to refresh memory or as a past recollection recorded, and where a witness was not asked whether he could recall *Miranda* warnings given to a defendant or whether he could recall the defendant's statement, the introduction of the defendant's statement through the testimony of the assistant prosecutor who elicited it, admitted as a past recollection recorded, was error.

9. CRIMINAL LAW—IMPEACHMENT—PRIOR OFFENSES—LACK OF COUNSEL.

A defendant's prior conviction which was obtained without afford-

ing the defendant benefit of counsel may not be used for impeachment purposes in a subsequent prosecution; it is for the trial judge to determine whether a prior conviction may be used for impeachment where a defendant challenges the use on this ground.

10. Criminal Law—Assault—Gross Indecency—Elements of Offense.

Assault is not an element of the offense of gross indecency.

11. Kidnapping—Gross Indecency—Elements of Offense—Included Offenses.

Gross indecency and kidnapping have no common elements, therefore gross indecency is neither a necessarily included nor a cognate lesser offense of kidnapping.

Dissent by Bronson, P. J.

12. Kidnapping—Instructions to Jury—Asportation—Underlying Activities—Independent Significance.

*An instruction to the jury in a trial for kidnapping in which the judge stated that the element of asportation must have independent significance, without stating of what it must be independent, adequately informed the jury that the asportation must be independent of any underlying criminal activity where the defendant was not charged with any underlying offense but the jury had heard much evidence on underlying criminal activities.*

13. Criminal Law—Evidence—Hearsay—Defendant's Statement—Harmless Error.

*The admission of hearsay evidence of a defendant's statement without proper foundation was harmless error where there was overwhelming evidence of the defendant's guilt, and the defendant did not dispute the truth of the statement, gave testimony substantially similar to the statement, and failed to object at trial to the admission of the statement.*

14. Criminal Law—Cross-Examination—Prior Convictions—Erroneous Record—Good Faith Reliance.

*Cross-examination of a defendant about a nonexistent prior conviction was not reversible error where the questioning resulted from a prosecutor's good faith reliance on an erroneous FBI record concerning the defendant.*

15. CRIMINAL LAW—IMPEACHMENT—PRIOR CONVICTIONS—HARMLESS
    ERROR.

> *Use for impeachment purposes of a defendant's prior conviction*
> *which was allegedly obtained without benefit of counsel is*
> *improper only if the use of the conviction might well have*
> *influenced the outcome of the case; the use of such a conviction*
> *was harmless error where there was overwhelming evidence of*
> *a defendant's guilt and proper impeachment by use of another*
> *conviction.*

Appeal from Oakland, Robert L. Templin, J. Submitted April 5, 1977, at Lansing. (Docket No. 26501.) Decided September 20, 1977. Leave to appeal applied for.

Robert L. Rappuhn was convicted of kidnapping. Defendant appeals. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief Appellate Counsel, and *Michael J. Modelski,* Assistant Appellate Counsel, for the people.

*Anthony C. Penta, Jr.,* for defendant.

Before: BRONSON, P. J., and M. F. CAVANAGH and C. J. BYRNS,* JJ.

C. J. BYRNS, J. Defendant was charged with kidnapping, MCLA 750.349; MSA 28.581. A jury found defendant guilty as charged and he now appeals by right.

Complainant, a prostitute, testified that late in the evening of December 8, 1974, defendant solicited her services near a bus stop at Woodward and Six Mile in Detroit. Complainant voluntarily entered defendant's car and they drove to a less conspicuous location. When they arrived there, defendant drew a knife, which he held at com-

---

\* Circuit judge, sitting on the Court of Appeals by assignment.

plainant's neck, and announced that he would not be paying complainant for her services. Defendant then bound complainant's hands, forced her to fellate him, and, after she tried to find the handle of the passenger door, threatened to hurt her if she again tried to escape.

Complainant continued to fellate defendant intermittently while he drove for a period that she estimated at about three or four hours. Eventually defendant's car became stuck beside a snowbank on a gravel road in Waterford Township and defendant climbed out the window on the driver's side to obtain assistance from the driver of an oncoming snowplow. While defendant was negotiating with the driver of the snowplow another car pulled up and a man walked toward defendant's car shining a light. When complainant recognized the man as a police officer, she began screaming and banging on the car door.

The officer, Ronald Neil, confirmed complainant's testimony. At approximately 3 a.m. Officer Neil approached defendant's car, observed complainant, bound, screaming, and banging her head against the door, and immediately placed defendant under arrest for kidnapping. While his partner placed defendant in the patrol car, Neil freed complainant's hands, using a knife which he found above the sunvisor in defendant's car to cut the shoelaces that defendant had used to bind her.

The same day, at approximately 10 a.m., defendant's statement was taken in the office of assistant prosecutor Richard Thompson. Defendant's statement was recorded by a court reporter and Thompson read the transcript of defendant's statement into the record when he testified at trial.

In his statement, defendant admitted having tied complainant's hands after telling her that he

wanted to have sex with her, but did not have any money. Defendant claimed that he tied complainant only because he feared she would harm him because he would not pay her, that he never did more than point at the knife, and that complainant was a willing participant and did not protest, except to ask defendant not to hurt her. Defendant denied that he had threatened to force complainant to have sex with numerous other men if she refused to cooperate with him. Defendant's testimony at trial was substantially identical to the statement he gave Thompson.

Defendant raises several claims of error, one of which is dispositive of this appeal. On the element of asportation, the trial judge instructed:

> "In order to find the defendant guilty of kidnapping, you must find as a matter of fact that the element of asportation was present. Asportation as defined is a movement from one location to another. In order to find the defendant guilty of kidnapping, this asportation of the victim or the complainant must have an independent significance."

Defendant, relying on *People v Adams,* 389 Mich 222; 205 NW2d 415 (1973), contends that the trial judge's instruction was incomplete, and therefore reversibly erroneous, because it failed to state of what the significance of the asportation must be independent.

It is the trial judge's duty to inform the jury of the law, so that they may understand and apply the law to the facts of the case. *People v Lambert,* 395 Mich 296, 304; 235 NW2d 338 (1975). A defendant has a right to have a properly instructed jury pass upon the evidence, and the instructions must include all of the elements of the crime charged. *People v Reed,* 393 Mich 342, 349–350;

224 NW2d 867 (1975); *People v Liggett,* 378 Mich 706, 714; 148 NW2d 784 (1967).

In *People v Adams, supra,* at 236, the Court held that "the movement element must not be merely incidental to the commission of a lesser underlying crime, *i.e.,* it must be incidental to the commission of the kidnapping". The Court also said:

"If the movement adds either a greater danger or threat thereof, that is a factor in considering whether the movement adequately constitutes the necessary legal asportation, but there could be asportation without this element of additional danger so long as the movement was incidental to a kidnapping and not a lesser crime." *Adams, supra,* at 238.

In the present case the trial judge not only failed to instruct the jury of what the significance of the asportation must be independent, he also failed to instruct that complicated movement and increased danger, or a threat thereof, are factors to be considered in determining whether the movement constituted the necessary legal asportation. See *People v Ross,* 73 Mich App 287, 290; 251 NW2d 268 (1977).

We recognize that this case posed an instructional problem because defendant was not charged with any underlying offense, such as gross indecency. MCLA 750.338b; MSA 28.570(2). We sympathize with the difficulty that thus confronted the trial judge in formulating an instruction that adequately conveyed to the jury the idea that the asportation must have significance independent of any underlying activity, without at the same time unduly emphasizing the criminal nature of the underlying sexual activity, which defendant forced complainant to engage in, but for which he was not charged with any crime.

This case is distinguishable from the more typical kidnapping case, in which the kidnapping is only one of two or more charged offenses arising out of the same transaction. See, *e.g., People v Ross, supra, People v Worden,* 71 Mich App 507; 248 NW2d 597 (1976), *People v Curry,* 58 Mich App 212; 227 NW2d 254 (1975), *People v Widgren,* 53 Mich App 375; 220 NW2d 130 (1974). Nevertheless, *People v Adams, supra,* was also a case in which defendant was charged only with kidnapping, and even though the facts in *Adams* reveal additional assaultive crimes with which the defendant conceivably could have been charged, the Court there held that the jury must be instructed that the movement element must not be "incidental to the commission of a lesser underlying *crime". Adams, supra,* at 236 (emphasis added).[1] We conclude, therefore, that the trial judge's failure to include the object of the predicate cannot be excused on this basis.

Our view of this case corresponds closely to that taken by the Court in *People v Hempton,* 43 Mich App 618, 625–626; 204 NW2d 684 (1972):

"This is not a typical street abduction. Typically, the offender's purpose is to facilitate the commission of the crime of armed robbery or rape, which, like kidnapping, are punishable by a sentence of life or any term of years. Here, the defendant's purpose was to facilitate the commission of a crime for which the legislatively

---

[1] When the prosecutor elects to charge the defendant only with kidnapping it would be better, in our opinion, to cast the instruction in more neutral terms, such as "underlying activity", to avoid imputing to the defendant criminal offenses with which he has not been charged. Indeed, defendant's requested instruction contained such wording, but the trial judge deleted it, thus rendering his instruction incomplete. The asportation instruction can be adapted to the needs of each case, so long as the idea that the asportation must be independent of, or not merely incidental to, the underlying offense (or activity, as necessity dictates) is adequately conveyed. *See People v Widgren,* 53 Mich App 375, 384; 220 NW2d 130 (1974).

prescribed penalty is a maximum of five years. [Foot-
note omitted.] Convicting the defendant of the crime of
kidnapping and thereby subjecting him to a possible life
sentence (and to an actual sentence, tantamount to a
life sentence, of 45 to 60 years) because of the move-
ment in the defendant's truck back to the house where
the victim and the defendant had shortly before spent a
number of hours together, is clearly a case of the 'tail
wagging the dog' and beyond the policy of the statute.'"[2]

Similarly, this case presents an atypical kidnap-
ping situation. Complainant, an admitted prosti-
tute, had agreed to provide sexual services for a
price that defendant could not pay. Defendant
inveigled her into his car on the pretense that he
could afford her services and drove her around for
four hours, at least in part to facilitate the com-
mission of sexual offenses with which he was not
charged. We do not say, as the Court in *Hempton*
appears to have done, that defendant cannot, as a
matter of law, be convicted of kidnapping under
such circumstances. Whether a particular move-
ment—in this case highly complicated movement
from Detroit to Waterford Township—constitutes
the requisite asportation, however, is a question of
fact for the jury, to be determined under the
appropriate standards. The trial judge's incom-
plete asportation instruction did not adequately
convey these standards, and therefore the convic-
tion must be reversed.

Our disposition renders extended discussion of
some of defendant's other claims of error unneces-
sary, but we will address briefly those questions
likely to arise upon retrial.

First, defendant's claim that the prosecutor

[2] Defendant in the present case was sentenced to 40 to 60 years
imprisonment.

failed to produce at the *Walker*[3] hearing all "res gestae" witnesses to his statement, and that the trial judge therefore erred in finding his statement voluntary, is without merit. "A res gestae witness is one who was an eyewitness to some event in the continuum of a criminal transaction and whose testimony will aid in developing a full disclosure of the facts surrounding the alleged commission of the charged offense." *People v Hadley*, 67 Mich App 688, 690; 242 NW2d 32 (1976). In this case, the witnesses' only connection with the case was their presence in Thompson's office when defendant gave his statement. They were not res gestae witnesses.

When defense counsel requested a hearing on the voluntariness of defendant's statement he declined to examine Officer Neil, of whose failure to testify at the *Walker* hearing he now complains, stating that,

"Since Mr. Thompson was the moving force behind that particular statement, since he was the, if you will, interrogator, I would ask this court to produce him now so that I may inquire of him as to whether or not there were sufficient safeguards in order to insure that the statement thus obtained was obtained voluntarily * * *."

Because Mr. Thompson was not available to testify that day, trial was adjourned and the *Walker* hearing was held the next day. Thompson testified as to where and when the statement was given, how long it took, whether any promises were made, whether defendant appeared intoxicated or under the influence of drugs, who was present, and the constitutional rights that defendant was in-

---

[3] *People v Walker (On Rehearing)*, 374 Mich 331; 132 NW2d 87 (1965).

formed of and waived. After defense counsel completed his examination of Thompson and the prosecutor rested, defense counsel "submitted" that in so resting the prosecution had not met its burden because "they have the possibility of calling two other witnesses". Defense counsel declined to offer any testimony, and the trial judge ruled defendant's statement voluntary, without defense objection.

Under these circumstances there was no error. Defense counsel had previously indicated that it was Thompson, not the other witnesses, whom he wished to examine concerning the voluntariness of defendant's statement. There is nothing in the record to suggest that defendant's statement was other than voluntary, and our independent determination of this issue leads us to affirm the trial judge's ruling. *People v McGillen #1,* 392 Mich 251, 257; 220 NW2d 677 (1974).

Defendant's next contention, which he raises for the first time on appeal, that the *Miranda* [4] warnings given to him at the time his statement was taken were insufficient because they did not adequately apprise him of his right to have appointed counsel present during the interrogation, is without merit. The obvious import of the right to a court appointed attorney and the right to have an attorney present during questioning is the right to have appointed counsel present during questioning.

Similarly meritless is defendant's contention that his statement was the product of an unlawful investigative arrrest. Clearly Officer Neil had probable cause to believe that the felony of kidnapping was being committed in his presence • when he

---

[4] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966).

observed complainant bound and screaming, banging her head against the door of defendant's car, and therefore the warrantless arrest was lawful. MCLA 764.15(a); MSA 28.874(a). Officer Neil testified that he placed defendant under arrest for kidnapping and defendant was booked for kidnapping prior to making his statement. Thus Thompson's use of the term "suspicion of kidnapping" during the interrogation to describe the basis for defendant's arrest cannot render the arrest unlawful, and the trial judge correctly held that defendant's warrantless arrest was lawful.

Defendant also argues that an insufficient foundation was laid to permit introduction of his statement as a past recollection recorded. Necessity is a prerequisite to use of a writing either to refresh memory or as past recollection recorded; the witness's memory must need refreshing. *People v Brassell,* 64 Mich App 445; 236 NW2d 99 (1975). Thompson was not asked, either at the *Walker* hearing or at trial, whether he could recall the *Miranda* warnings given to defendant, nor whether he could recall defendant's statement. The statement was hearsay, an extrajudicial statement by the court reporter who transcribed it offered to prove the truth of the thing said, and its admission as a past recollection recorded without proper foundation was error. *People v Rodgers,* 388 Mich 513, 519; 201 NW2d 621, 624 (1972).[5]

Defendant also objects to the use for impeachment purposes of his allegedly uncounseled conviction for assault with intent to commit murder. If,

---

[5] If, on retrial, the statement is offered under the past recollection recorded exception to the hearsay rule, rather than being used to refresh present recollection, the court reporter who transcribed the statement, and not the assistant prosecutor who elicited it, shall be called as a witness. *See People v Rodgers,* 36 Mich App 211, 220, 225–226 n 5; 193 NW2d 412 (1971) (LEVIN, J., dissenting), *adopted* 388 Mich 513, 519; 201 NW2d 621, 624 (1972).

indeed, defendant's conviction was obtained without benefit of counsel, in violation of *Gideon v Wainwright,* 372 US 335; 83 S Ct 792; 9 L Ed 2d 799; 93 ALR2d 733 (1963), it may not be used for impeachment purposes. *Loper v Beto,* 405 US 473; 92 S Ct 1014; 31 L Ed 2d 374 (1972), *People v Moore,* 391 Mich 426; 216 NW2d 770 (1974). As there is nothing in the record to support defendant's assertion that he was without counsel when he was convicted of assault with intent to commit murder, however, it is for the trial judge on remand to determine this conviction's admissibility for impeachment purposes. In addition, even if this, or any other, conviction is admissible under *Gideon, Loper,* and *Moore,* the trial judge must also recognize and exercise his discretion to exclude reference to defendant's convictions in accordance with the standards set forth in *People v Jackson,* 391 Mich 323, 332–333; 217 NW2d 22 (1974).

Defendant also contends that the trial judge erred in refusing to give defendant's requested instructions on gross indecency, MCLA 750.338b; MSA 28.570(2), and assault, MCLA 750.81; MSA 28.276, which he maintains are lesser included offenses of kidnapping under the tests announced in *People v Ora Jones,* 395 Mich 379; 236 NW2d 461 (1975).

Assault is not an element of the offense of gross indecency. *People v Jones,* 75 Mich App 261; 254 NW2d 863 (1977). Thus gross indecency shares no element with kidnapping, and is neither a "necessarily included" nor a "cognate" lesser offense of kidnapping.

On retrial, defendant will not be entitled to an assault instruction, under the prospective rule announced in *People v Chamblis,* 395 Mich 408,

429; 236 NW2d 473 (1975), because assault is a 90-day misdemeanor. MCLA 750.504; MSA 28.772.

We need not address defendant's remaining assignments of error, as they are unlikely to arise upon retrial.

Reversed and remanded for proceedings consistent with this opinion.

M. F. CAVANAGH, J., concurred.

BRONSON, P. J. (dissenting). The majority reverses because of what it views as an inadequate asportation instruction. I would hold that the instruction given was adequate to inform the jury of this requisite element of kidnapping.

The trial court instructed the jury as follows:

"In order to find the defendant guilty of kidnapping, you must find as a matter of fact that the element of asportation was present. Asportation as defined is a movement from one location to another. In order to find the defendant guilty of kidnapping, this asportation of the victim or the complainant must have an independent significance."

Defendant contends that this instruction was inadequate, because it failed to specify of what the asportation must be independent. Defendant relies on *People v Adams,* 389 Mich 222; 205 NW2d 415 (1973). I would hold that the trial court's instruction satisfied *Adams.*

In *Adams, supra,* at 236, the Court held that "the movement element must not be merely incidental to the commission of a lesser underlying crime, *i.e.,* it must be incidental to the commission of the kidnapping". Whether the required asportation independent of any underlying offense was present in the instant case was a jury question, to

be decided after a charge instructing them on all elements of the offense. *People v Adams, supra,* at 244–245.

Unlike *Adams* or *People v Hempton,* 43 Mich App 618; 204 NW2d 684 (1972), on which the majority relies, there was an asportation instruction in the instant case. The problem is whether it sufficiently conveyed to the jury the idea that the movement element of the kidnapping had to be independent of any underlying offense. I would hold that it did.

One unstated policy of requiring asportation independent of any underlying crime is to prevent overcharging.[1] For example, where the underlying crime is relatively minor, an overzealous prosecutor may be tempted to charge kidnapping, with a maximum penalty of life imprisonment. See *People v Hempton, supra,* at 625–626. Thus, the jury must be charged that asportation must be independent.

There are no magic words required for instructing the jury on the asportation element. *People v Widgren,* 53 Mich App 375; 220 NW2d 130 (1974). It is sufficient if the essence of the *Adams* asportation standard has been captured. *Id.* In the instant case, the jury heard much evidence on underlying criminal activities—a possible assault and forced sexual conduct.[2] The trial judge's instruction expressed to the jury the idea that the asportation element of kidnapping had to be "independent". The only possible meaning of this instruction is that the asportation must have been independent of the underlying activity.

---

[1] In *People v Adams, supra,* the Court held that the independent asportation element was required to prevent the kidnapping statute from being unconstitutional.

[2] Defendant was not charged with any other offenses. *Adams,* however, as the majority points out, held that the asportation instruction is required even if no other crimes are actually charged.

The trial judge in the instant case was faced with the dilemma of instructing the jury that the asportation must be independent of underlying crimes while at the same time not unduly emphasizing the criminal nature of the underlying activity for which defendant was not charged. While the charge may not be a model for emulation, I believe it adequately conveyed the essence of *Adams.*

I would also hold that none of the other alleged errors require reversal.

First, I would hold that the admission of hearsay evidence of defendant's statement without proper foundation was harmless error as there was overwhelming evidence of defendant's guilt and defendant did not dispute the truth of the statement, gave testimony substantially identical to the statement and failed to object to admission of the statement at trial. See *People v Kregger,* 335 Mich 457; 56 NW2d 349 (1953), *People v Cousins,* 65 Mich App 709; 238 NW2d 378 (1975), *People v Vargas,* 50 Mich App 738; 213 NW2d 848 (1973).

Secondly, an error in an FBI "rap sheet" resulted in defendant being cross-examined about a non-existent breaking and entering conviction.[3] Good faith reliance on a rap sheet excuses the asserted error. *People v Sanders,* 394 Mich 439; 231 NW2d 639 (1975).

Third, the use of an allegedly uncounseled conviction for impeachment is improper only if use of the conviction "might well have influenced the outcome of the case". *Loper v Beto,* 405 US 473; 92 S Ct 1014; 31 L Ed 2d 374 (1972), *People v Moore,* 391 Mich 426; 216 NW2d 770 (1974). In view of the overwhelming evidence of defendant's guilt in the

---

[3] Defendant apparently was convicted of entering without breaking.

instant case and proper impeachment with a felony conviction, I am persuaded that the use of the uncounseled conviction was harmless error.

Finally, I would hold that the trial judge did recognize and exercise his discretion in ruling on the admissibility of defendant's prior convictions. See *People v Jackson,* 391 Mich 323; 217 NW2d 22 (1974).[4] No other issues raised by defendant require reversal.

I would affirm the conviction.

---

[4] In discussing the admissibility of prior convictions, the following exchange took place:

*"The Court:* In any event, there is no agreement, and the court does rule the prosecutor would not be prevented from bringing out at least the defendant's alleged prior conviction of this assaultive crime.

*"Mr. Penta:* Is the court saying it will exercise its discretion with respect to my particular motion?

*"The Court:* Right."

Although other isolated statements may indicate to the contrary, I would hold that the trial judge did in fact recognize and exercise his discretion.